Our next case today, number 231900, United States v. Alex David Davila-Olivo. Will Counselor for Appellant please come up and introduce yourself on the record to begin. Good morning, Miles Pope from Mr. Davila and I would like to reserve two minutes for rebuttal. You may. Counselor, I see you came from Idaho? I did. Well, welcome to Puerto Rico. Thank you. I'm here. The sole legitimate purpose of a Lafler hearing is to guard against a defendant's frivolous claim that his counsel failed to convey the terms of a plea offer. The district court went well beyond those legitimate bounds in this case and violated Rule 11's unequivocal bar against judicial involvement in plea negotiations in the process. Instead of simply eliciting the government's plea offer and confirming that it had been discussed with my client, it devoted large swaths of the Lafler hearing to contrasting the severe sentence that Mr. Davila would receive after trial to the comparatively lenient sentence that he'd get if he pled. And it also explicitly injected itself into the plea negotiations, affirmatively encouraging Mr. Davila to continue negotiating. Mr. Pope, our time is limited. I have no disagreement with your argument that there was an 11C error here. My concern is about its effects and how clearly it was raised in our standard of review. And in particular, I wonder if you could address the following points that the objection in the district court was not a clear 11C objection, instead it was aimed at counsel. And that Mr. Davila Oliva did not actually agree to a plea agreement until nine months after the 11C violation and it was a much better deal than had been on the table back at the time of the Lafler hearing. I'll address those in reverse order. Because my position is regardless of the standard of review, whether plain error or not, we prevail. So with respect to that, I understood the government's argument. It sort of focused on, look, Mr. Davila did not immediately accept the plea offer on offer. He continued to negotiate for months. But that is exactly what the district court here encouraged him to do. It said at the end of the hearing, turn to the government. Is a counteroffer, are you receptive to a counteroffer? Government says yes. It pointedly turns to Mr. Davila's counsel. You understand that. And then it gives an extent, it states when it says I'm giving you an initial 30 days. Just help me understand, what is the significance of that fact? Let's say we agree with that. Does that mean it necessarily follows that there is prejudice because we can never know, no matter what happens in the future, whether he's doing it because he was pressured at that earlier hearing? No. So if it doesn't mean that, then what's the significance of it? I hate to be mushy, but it's a factor. The significance is that you, it would be one, you know. It's a factor. It'd be different if he hadn't said anything about the future. But the future here is nine months later. The future is nine months later, but the future... So that's a long time for that lingering thing to still be affecting him, when in the immediate aftermath of it, he doesn't seem to be shifting his position. Well, there's a few points in response to that. First, I agree it is a long time. There's also, though, very clear case law, and appropriately so, about the inherently coercive and extraordinarily powerful effect of a judge's involvement in plea negotiations. And so, you know, that is an impetus towards further negotiation. The other thing is, because of the, and this maybe gets to your initial question, because the court is saying, like, continue negotiating, negotiations inherently take time. So the fact that there's some additional time here and the court isn't saying, you should plead right now, is actually suggesting that the court's pressure did in fact work. But then, I agree, if it was just that, it would be a different case. But here we also have, you know, the court recognizing in future hearings that this is what's going on, saying to defense counsel, like, sure, I'll give you extra time to twist your client's arm. I understand it's a little flippant, but it also is telling that that is what's happening here. And in addition, you have Mr. Davila, you know, after he pleads guilty, repeatedly expressing his feeling that he'd been pressured and coerced into doing this. This was not somebody who wanted to plead. I think the record's very clear on that. He loses acceptance of responsibility points in the PSR interview because he doesn't want to plead. And so, you have, you know, against the backdrop of, it is inherently coercive and it's only the rare case where a court's Rule 11 violation isn't going to have an effect, and you see all of that in this record specifically, that's enough. Now, maybe, if you just layer on the standard of review onto this. Yes. Okay. So let's say what you're saying has some force and maybe in a case in which we weren't under plain error, there would be force to that. But when it's a mushy standard, and it's that fact specific, and it's these kind of facts, how is it evident that the prejudice burden which you bear can be met? Or, I guess, in answering that, is there any authority we could look to that would help us see how what you're saying lines up with what other courts have said? Well, so on the preservation point specifically, I will just candidly agree that I think we all, there's no secret fact in the record that I can point to that the court's not aware of. He moves to withdraw his plea. He expresses the assertion. But Judge Hamilton, you were absolutely correct. His coercion point is related to counsel. This is surely one of the most difficult kinds of objections for counsel to make, right? Correct. And I was going to... Sorry. No. No, no. I appreciate it. Because that's exactly... You'd rather have him say it. Yeah. Good. I see the time. No. Yes. And we have the Supreme Court in Davila saying that there are certain circumstances, there are these extraordinary circumstances where the court will basically say, even if you didn't clearly preserve this objection, we're still, you know, harmless errors waived. I will say why I think this is one of those cases, just sort of elaborate on that a little bit. What the Supreme Court is talking about when it's doing that extraordinary circumstances analysis is it's saying, when there is an incentive misalignment, when it's not just that it's an awkward objection for the defense counsel to make, but when there is some indication that defense counsel is, you know, well-intentioned, I want to be very clear, totally well-intentioned here. But, you know, the duty and loyalty is ultimately, if your client wants to go to trial, you've got to go to trial. And if defense counsel, as it did here, is asking for this hearing and saying, let's have this, I want to have this hearing, and then is just sitting there as the court is doing something that, again, is really a remarkable deviation from what a Lafler hearing ought to be. Who requested the Lafler hearing here? Defense counsel? Court suggests it, and defense counsel says, essentially, that would be a good idea. So that's what happened. This is the kind of case, frankly, where both defense counsel and the district judge probably have a pretty good idea of what's in this defendant's best interest. I will agree, it's not allowed, and so on, but it's hard to see either one as anything but well-intentioned here. Does the defendant, Mr. Pope, understand that he could wind up with a much more severe sentence if he prevails in this appeal? I cannot, the answer to that is, yes. Okay. Why are you hesitating on that? Well, I didn't want to, I don't want to put words in my client's mouth, you know, but I... He's been fully advised that that's a consequence.  Yes. Okay. Could I ask you, just very quickly, on the supervised release point, I understand your, the general point, but I didn't understand specifically which of the terms gives you or him any concerns. Well, it's, the issue is, again, it's not really in the, it's not really in the rec, he didn't have an opportunity to object, so I'm sort of at a, I was at a disadvantage in trying to articulate that to the court because I don't have, I don't have an objection. The issue is really he didn't have the opportunity to... I understand the principal point, I just, that is, there's an objection to the way this was handled procedurally, but I just was wondering what specific condition of supervised release is troubling at this point. Obviously, that can all be sorted out later, if I remember the way 3583 works. Yes, that's correct. I mean, you know, I, it would, if, it would, again, be the sort of risk notification condition, it's not entirely clear that there's some individual that Mr. Davila would, like, this is not the sort of case where you'd have a specific individual where you...  Thank you. Et cetera. Thank you very much. Thank you, counsel. Council for Appley, please come up and introduce yourself on the record to begin. Good morning, your honors, and may it please the court. Ricardo Inbert Fernandez for the United States. I'd like to start off with the preservation point that the court was just discussing. And before I dive into it, I want to talk about Davila, the Supreme Court case, not the defendant Davila. My colleague is citing to that case for the proposition that the Supreme Court in that, in Davila, undertook an analysis where plain error could be excused in this sort of case. That's simply not true. In Davila, what the Supreme Court did was remand back to the circuit court the case because the circuit court in that case had concluded its analysis at a finding of error and had not gone on to consider plain error or harmlessness as mandated by Rule 11H. I also would like to emphasize that Judge Hamilton, you made a point that this could be one of the more difficult objections for a defendant or a counsel to raise to a district court. And I don't think that distinguish, that distinction should carry the day here. It's in the government's view no different to a host of other mistakes that a court can commit that a counsel or a defendant has to bring to the attention of the court. And this court has required objections in those cases. It should also do so here. The bottom line is that preservation doctrines, plain error exists because when the court is not...  Yes, Your Honor. This is about as plain as they come. Right? We disagree, Your Honor. Given from the transcript of the Lafler hearing where the judge is making sure that everything is laid out in great detail about the alternatives for the defendant and how tough things are going to be if he goes to trial? Your Honor, I don't think that is a... I think in context the court was merely informing the defendant of his plea agreement and his exception... The court has no business doing that, okay? Rule 11C is clear, it is categorical, it doesn't have exceptions, and this went way beyond the permissible bounds of a Lafler hearing. The question is about its effect, as you say, particularly because of the absence of a more specific objection. And I guess my question, you rely on the delay here before a plea was ultimately entered. Yes, Your Honor. I'm trying to think, though, of anything that would be more unforgettable to a defendant than the warnings that this defendant got from the district judge in the Lafler hearing. Your Honor, the thing is we have, in the record, we have a moment, and that's at the Appendix 579. We have a moment in the record here, and it's a month and a couple days after the Lafler hearing where the parties at a status conference, they discuss the status of plea negotiations at that point, and the defense informs the court that the defendant is only willing at that point to plead guilty to a single count. The government has not accepted that counteroffer. And then the parties inform the court that there's no path forward. That sounds like another violation of 11C. The defendant wasn't present at that. No, no, Your Honor. Is this the twist your arm? No, Your Honor. This is a separate. Yes, this is separate, and these are just the parties notifying the court that they're ready to move to trial. But isn't this just a baseline question? If we start with the idea, as the defendant's representing, that he wants to go to trial, now he's had a hearing where he's heard from the judge that the, if this is a fair characterization of it, you probably dispute it, but assuming it is, that the judge is making it fairly clear to him that that's a bad idea. I understand you disagree with that, but for prejudice purposes, let's assume that's how the hearing happened. Then what we're really just thinking is, at each point, this person is claiming, I want to go to trial, but I've been pressured by the judge to think I shouldn't. And so from that perspective, as your opponent, counsel, put it, and I'd just like you to address it, why don't we view this whole nine-month experience as the playing out of the defendant doing what the judge suggested he do, notwithstanding his own independent desire to go to trial, which once the Lafley hearing occurs, he realizes that's not such a great idea. And everything here is just bargaining against a baseline, which his real preference would be just to go to trial. Again, Your Honor, I would be... How do we have confidence that's not what's happening, such that we could say he hasn't shown his... Your Honor, I have two points to make there. The first would be, again, to refer the Court to the point in the record where we have a clear breakdown in negotiations, and we have the parties no longer engaging in plea negotiations, and they're ready to go to trial in October. And this is happening in September, and they're going to trial in October. In October, they have a further pretrial conference where it's ultimately moved on the party's request. What happens in September? When you say there's a clear breakdown, what's the record show on that? The record shows that after the Lafley hearing, the defense has... Is that one month right after, period? A month and 10 days, or between 5 and 10 days. The defense, again, informs the Court that they have tendered a counteroffer to the government. The government has rejected, and then the parties state in open court that further negotiations are... That they're ready for trial. And then the Court doesn't push, doesn't do anything, simply says, all right, I guess we're going to trial, and then swiftly sets a trial date for the following month. The following month, the trial is... Your thought is that at that moment, we can no longer accept the account that the defense counsel's giving, because there you have it, a month later, and we just got in open court to defend and saying, I'm ready to go to trial. Yes. We have a break in that sort of chain. If we were to say that in that entire nine month period... That's a different point from delay. That's the actual way the events proceeded here. There's just a clear break where it's evident he's no longer under the sway of the judges. Yes, Your Honor. And they work together. Nine months is an extraordinarily long amount of time, and the court in Davila itself... What happens after that event, when he says we have a breakdown? When we offered our counteroffer, and now we're ready to go to trial, what's the next step that happens that gets negotiations going again? It's not clear on the record, Your Honor, although that hearing is on August 18th. Who makes the... Someone then must have restarted negotiations. It's unclear on the record, Your Honor. We don't know if the next move to start negotiations... Was the defendant or the government. We don't know at what point negotiations got ongoing again. And I'd submit to the court that that lack of clarity on the record on plain error review goes against the defendant, not the government. Why does it even matter? Because to establish a clear and obvious... You've got... Negotiations reach temporary loggerheads all the time, whether we're talking about tariffs with China or a labor unions contract or anything else. You reach an impasse, you wait, or let's say reopening the government. Which many of us in this room can feel, right? Your Honor, I think that's a fair point. But in the context of this case, if the position that my colleague has taken is that what occurred at the Lafler hearing was so pervasive that it cost the defendant to realize that he had to, at whatever cost, plead guilty, then the defendant would not have reached an impasse. Obviously, it was not at whatever cost, because he was still willing to say no for a while. The question is whether that, in essence, poisoned the well here, whether the Lafler hearing poisoned the well and continued to affect... And I've got to say, to me, it seems like the kind of thing that would just be unforgettable. Your Honor... What was the government's offer at the time when the defendant made it clear at that one-month period that he was willing to go to trial? Your Honor, the offer at the Lafler hearing was a recommendation for 270 months and a dismissal of two of the 924C counts, the 924C brandishing counts. And what does he come back with? Pleading guilty to a single count. And then the government says, no, we reject that? Yes, the government... So we're staying with our same original offer? The government says, no, we reject that, and then the parties apprise the court that further negotiations are... The final deal? I'm sorry, Your Honor? What was the final deal again? The deal that he pled guilty to? That was the dismissal of the same two brandishing counts, the dismissal of four carjacking counts, including a carjacking resulting in serious bodily injury. May I finish my answer to your question, Your Honor? Thank you. The four carjackings, including the serious bodily injury one, and then a recommendation for 180 months, which is seven and a half years less than what he had originally received, and no violent crimes, no crimes of violence on his record, which is also significant for credits and prison programs. Thank you, Your Honor. We ask that this court affirm. Thank you, Counsel. Attorney Miles Pope, you have a two-minute rebuttal. Thank you. Miles Pope again. I want to start where my colleague left off, which is it is absolutely true that he ended up pleading guilty and accepting a 15-year offer, and it is also true that at the Lafler hearing, the representation was the offer was 270 months. That 15 years was a substantial upward variance from what he would have gotten if he'd just been convicted of the offenses that he ended up pleading guilty to. And his consistent representation, what he's maintained consistently throughout the course of these proceedings was, I am innocent of the carjackings. And so that plea was ultimately driven by, you know, the upward variance was driven by, it's very clear, the sort of presumption or belief, you know, so... Doesn't that hurt you on prejudice? No, because he... You say his consistent view was he was innocent of the carjackings, and when the carjackings are on the table, he's willing to go to trial notwithstanding the Lafler hearing, and then when they take the carjackings off the table by dropping the four counts, then suddenly he's willing to plead. So that suggests that what mattered to him wasn't necessarily what was happening at the Lafler hearing, but his own view about the carjacking. Well, but his sentence is driven by the carjackings. So the problem there is that he's, you know, I don't, we don't know how those conversations went down. And I get that. That's really, I guess, the real thrust of what I'm asking. We have two different things if we're in plain error and thinking about prejudice. One, it's when you have a defendant who says, I want to go to trial, it's a little hard to say, no, you really don't. So that helps you. On the other hand, the burden is on you, and we don't have a categorical rule that whenever the defendant says they want to, and there was an error, defendant wins. So what's the delta here, and what about this case kind of pushes it more in your favor rather than not? And I guess that's what I'm sort of struggling with. If I may, you know, the only thing I would add that's sort of over and above what I've already, you know, yammered about a little bit is that, you know, it's true, if we're under plain error, the standard is, the burden is on me. But it's a burden to show a reasonable probability that the outcome would have been different. So I think it's really important to focus on what that burden actually is. And when you're looking at the totality of what happened here, including the nature of the Rule 11 violations, and then my client's conduct, consistently expressing his reluctance to plead, and then, you know, immediately being like, I was coerced, there is a reasonable probability that what the judge did had an impact. Can you remind us, what was the, at the time of the Lafler hearing, what was the, what were the consequences looking like if he went to trial, quantitatively? They were in the 500-month range. Thank you. Thank you. Thank you, counsel. That concludes arguments in this case.